# Woodruff *et al.* v. Stough.

*Bill in Equity to enjoin Execution on forfeited Statutory bond.*

1. *Estoppel of mortgagor in equity; election to claim mortgaged property or proceeds of sale thereof.*—Where a mortgage covers both real and personal property, and on the mortgagees bringing detinue for the latter it is delivered to them on their forthcoming bond, pursuant to the statute (Code § 2718) and before the trial the mortgagees sell it, together with the mortgaged lands, under the power in the mortgage,

[Woodruff *et al.* v. Stough.]

and at the trial the defendant (mortgagor) requires the amount of the mortgaged debt to be ascertained by the jury, under Code § 2720, and on such inquiry the mortgage debt, at his instance, is credited with the proceeds of such mortgage sale, and the mortgagor pays to plaintiffs, (mortgagee) the balance found by the jury to be due on the mortgage debt, after such credit was so allowed, which payment is entered upon the record by the clerk, the mortgagor is estopped to demand of the mortgagees a return of the property, or to enforce their delivery bond on its being returned forfeited by the sheriff, and equity will, at his instance, enjoin an execution issued on such bond.

(BRICKELL, C. J., and McCLELLAN, J., dissenting.)

APPEAL from the Chancery Court of Crenshaw.

Tried before the Hon. JERE N. WILLIAMS.

The facts of the case are sufficiently stated in the opinion.

GAMBLE & POWELL for the Appellants.—Before a court of equity will interfere with a judgment of a court of law, or the judgment or decree of any court of competent jurisdiction, it must affirmatively be shown that the party complaining is without fault or neglect on his part, and the wrong sought to be redressed is the result of fraud, accident or mistake, or the act of the adversary party; and that the party complaining was thereby prevented from presenting his cause of action or setting up his defenses at the time of the rendition of the judgment or decree—3 Brick. Dig. p. 347, § 230, and the numerous authorities there cited.

The bill in this respect is fatally defective, so also, if it had been illegal and wrong for appellant's counsel to demand and insist on the credit of the proceeds of sale being allowed, what hindered appellee from resisting the allowance, and if he had been unsuccessful, what hindered him from having the wrong corrected by appeal to this court; and so long as this action of the circuit court remains unreviewed or undisturbed, it is final. For this court has clearly held that a judgment or decree of a court of competent jurisdiction, whether the jurisdiction is exclusive or concurrent, superior or inferior, until reversed, is final and conclusive, not only as to the facts actually litigated and decided, but of all facts necessarily involved in the judgment or decree, and this principle is as binding on courts of equity as on courts of law.—3 Brick. Dig. p. 347, § 228, and cases

there cited. And this court has further held that a judgment or decree may be founded on error or may have wrought wrong or injustice, still some special ground for equitable interference, some cause of which the party complaining could not have had the benefit by proper diligence when the judgment was rendered, must be alleged and shown or the judgment will remain a bar to further litigation,—3 Brick. Dig. p. 347, § 229. The bill in this case is too defective in its averments for appellee to insist on it as it appears in the record. Suppose appellants did ask for an illegal credit on the mortgage debt in the detinue suit, and appellee sat by and made no objection to its allowance, can he come into a court of chancery and seek to undo that which was done without any objection from him? Certainly not, for he must know that the object of the statute in allowing the defendants to put in issue the mortgage debt and have it correctly ascertained by a jury, was and is to give such defendants an opportunity to pay off such mortgage debt and thereby to gain the possession of their property free of encumbrances.

Again appellee insists that he is entitled to relief because his attorney was ignorant of the payment to the clerk, and the collection by him as the attorney of the appellee of the amount ascertained by the jury to be due on the mortgage debt. This statement can furnish no ground for equitable interference. Again appellee insists that the verdict found and returned by the jury ascertaining the value of the property sued for and the amount due on the mortgage debt and the judgment entered thereon under the statute, was a mistake of court and jury and this without fault or neglect on the part of the appellee, and that he, the appellee, was ignorant that appellants would pay the amount due on the mortgage debt and claim the property, which is but another plea for relief on account of appellees ignorance when appellants in no manner misled appellee.—*Moore v. Foggard*, 51 Ala. 525.

Again the averments of appellee's bill shows that the personal property sold by appellee and one Tranum, under their mortgages, brought the sum of $400, and the jury assessed the property at $1,327. Now we insist, it would be most inequitable in any aspect of the case, for the appellee to retain property worth $1,327 for

[Woodruff et al. v. Stough.]

only $400, and he, the mortgagee, thus taking advantage of the mortgagor and his necessities, which is evidently inequitable, and should not be tolerated. Appellee is now coming into a court of chancery, and is required, before asking equity, to offer to do equity, and yet while he complains that a solemn judgment, to which he was a party in a suit brought by him and rendered without objection on his part, is about to injure him, yet he offers to return nothing of the $1,327 worth of property which he obtained by the giving of his detinue bond, so that we insist appellee did not come into the court of chancery with clean hands. Again, if appellee was prevented by appellants, or without fraud or neglect on his part, from prosecuting the case, he had the right under the statute to apply for a rehearing under the statute. Code, section 2872, and long before the expiration of five months after judgment, the appellee certainly knew appellants had paid the amount due on the mortgage debt, and was proceeding to assert their rights under the judgment, and yet he waited more than four months before attempting any resistance, although he had a clear legal remedy.

J. D. GARDNER for the appellee.—First. The decree of the chancellor overruling the demurrers in this case, can be supported on the authority of *Espalla v. Towart*, 96 Ala., 137. Second. The bill invokes the doctrine of estoppel against the appellants on the principle that they ratified the sale of the property and purchase by the mortgagee by claiming credit for the proceeds in the detinue suit, and by its allowance to them in ascertaining the amount due on the mortgage debt. In the case cited *supra*, it was held that the mortgagee was estopped from foreclosing his mortgage against the property after he had in another suit claimed the proceeds of the sale of the same property, and we do not see why the same principle may not be applied to a mortgagor who is seeking to recover in detinue, property, or its alternate value, after he has received the benefit and proceeds of the sale of the same property. It cannot be said that the complainant in this cause, when he allowed credit for the proceeds of the sale of the mortgaged property in the detinue proceedings, knew that the defendant in the detinue case would after-

wards undertake an unconscientious advantage of him and claim the property.

McCLELLAN, J.—The appellee, Stough, who is complainant in this cause, and R. J. Cook, jointly owned a certain mill and ginnery outfit, consisting of a steam engine and boiler, a saw mill, a grist mill, two gins and one cotton press and fixtures, three yokes of oxen, and one dray. They sold the entire outfit to Woodruff and others, who are respondents to the bill, and appellants in this court. The agreed consideration was eighteen hundred ($1,800) dollars, payable at a future time. To secure payment of the purchase money, the purchasers, at the instance of the sellers, executed separate notes to Stough and Cook, each for one-half the agreed price, or $900, and also a separate mortgage to each of them to secure the payment of $900, severally. These mortgages each covered a one-half undivided interest in the property sold; and also certain land upon which the personalty was at the time of the sale, but whether the whole or in terms, undivided half interests in the land was embraced in the mortgages respectively, we are not advised, nor is it material. Cook subsequently transferred the note and mortgage he held to Tranum. After the law day of the mortgages, Stough and Tranum each brought an action of detinue for the personalty against Woodruff, *et al.* The defendants failing to give bonds for the retention of the property within the statutory period, the plaintiff in each of the actions gave the necessary bond for the forthcoming of the property, and took possession of it—we suppose jointly, but that is also immaterial. After this and before the trial of the detinue actions was had, Stough and Tranum sold the personalty under and in accordance with the powers of sale contained in their mortgages, and they severally became purchasers at that sale of the interest embraced in their respective mortgages at the price of $200. By like authority they also sold the land covered by the mortgages, and themselves, jointly we suppose, purchased it for $700. The detinue suits coming on after this for trial, the defendants in each of them made the suggestion provided for in section 2720 of the Code, whereby it became the duty of the jury to ascertain the amounts

[Woodruff *et al.* v. Stough.]

of the mortgage debts; and this inquiry was accordingly gone into. In the course of it in each case, as the bill alleges, the defendants "each insisted and demanded that the amount due on the mortgage debt should be credited with the amount which the property brought," at the sales under the power, which, as we have seen, occurred pending these actions, and they also insisted that the mortgages should be further credited with the amount for which the land had been sold and purchased by Stough and Tranum; and accordingly these sums were credited against the mortgage debts. and in this way the jury while returning a verdict upon which there was judgment for the plaintiff, ascertained a balance due on each mortgage of $52.20. These ascertainments were entered upon the record, and the court we assume, as required by the statute, thereupon ordered in each case that if the debt so ascertained, interest and cost, should be paid within thirty days, no execution or other process should issue on the judgment for the property. Such payment was made to the clerk for the use of the plaintiff, and the money was paid by the clerk to the plaintiff in each case; and the necessary indorsement of the fact of such payment was made by the clerk on the face of the judgment. The jury also assessed the value of the property taken by plaintiff in each case at $1,370. The property so taken and held by the plaintiffs severally under the forthcoming bonds given by them was not delivered up by them within thirty days, as required by section 2721 of the Code, and they each being on the facts we have stated, the unsuccessful party under the last clause of section 2720, and within the terms of section 2721, the sheriff made return of the fact of such failure to deliver up the property, as required by the latter section; and the bond in each of the cases having upon this return the force and effect of a judgment, the clerk under the authority conferred upon him by said section, issued executions against the obligors on the bond in each case for the value of the property as assessed by the jury.

The foregoing are the facts averred in the present bill exhibited by said Stough, in which it is also averred that the complainant, "being ignorant of the legal effect of the judgment rendered in said circuit court, and ignorant of the legal consequences thereof, accepted the said

sum ($52.20) so found by the jury to be the balance due upon said mortgage debt, and that on the 9th day of May, 1893, (the judgment in the detinue suit having been rendered on March 17, 1893, and execution on the forfeited bond having issued on May 1, 1893,) he tendered to said respondents the said $52.20 with interest thereon, which they refused to receive." The prayer of the bill is that "the respondents be held to have ratified the purchase of said property by orator at said mortgage sale by claiming credit for the amount bid therefor by your orator at said mortgage sale, or, if this is not an appropriate relief, orator then prays that said respondents be required to credit the amount of the claim by respondents against orator with the said sum for which they have already received credit." The prayer further is that it be decreed that the "respondents are not entitled to a judgment against orator and said Tranum, for the full amount of the value of the property as ascertained by the jury, but to only one-half thereof;" and if mistaken in these prayers, the complainant asks for such other and further and general relief as the premises may warrant, &c.

A demurrer, assigning numerous grounds, was laid against the bill and sustained by the court, but with leave to complainant to amend. Whereupon the following amendment was filed and allowed: "Orator avers that the verdict so rendered by the jury in so far as they ascertained the amount due on the mortgage debt, and the judgment of the court entered in accordance therewith, was a mistake on the part of said jury and the court which rendered said judgment, which mistake was made without fault or negligence on the part of the complainant as he did not know that respondents would afterwards claim the property which had been sold, and which sale they ratified by accepting the proceeds thereof and claiming the same as a credit on their indebtedness to the complainant. And complainant avers that he had no notice that said respondents would set up said claim." To the bill as thus amended the original demurrer was refiled, and an additional ground of demurrer, that the complainant had a plain and adequate remedy at law, was interposed. All the assignments of demurrer were then overruled; and from the decree in that behalf the respondents prosecute this appeal.

[Woodruff *et al.* v. Stough.]

This is an anomalous case upon the facts, and one which exhibits much of hardship to the complainant. It belongs to that class of hard cases which sometimes makes "shipwreck of the law." It must have been the bias which is characteristic of just minds against natural injustice that led to the decree below. That injustice was done the complainant by the verdict and judgment in the circuit court, is clear. But courts of equity do not undertake to remedy all wrongs nor to see to it that abstract justice is done in all cases. They grant relief only when the facts bring a case within some ground of equity jurisdiction. When the wrong complained of results from a judgment at law, such judgment itself must have resulted from fraud, accident or mistake. Mistake is the equitable ground attempted to be put forward here, and no question of fraud or accident arises. What mistakes will authorize the interposition of chancery? In the first place, it must be a mistake of fact, not of law; all courts indulge the presumption that all men know the law, and will entertain no plea of ignorance of the law. The mistake of fact must have been made without fault or neglect of the party relying upon it. And it must be the mistake of the party who does rely upon it; not of his opponent, not of the jury, which returns the verdict, not of the judge who presides at the trial, and not of the court which renders the judgment. The mistake of the jury is remediable through proper and timely invocation of the powers of the presiding judge, and his action upon such invocation is revisable by this court. So also of mistakes of the presiding judge and of the court: they are remediable here. Such mistakes are mere errors of law for which resulting judgments will be set aside in the court rendering them or by this court on appeal. The chancery court is without power to correct them. The judgment of a court of law, though it be honeycombed with errors of fact committed by the jury and errors of law committed by the judge is as valid and as unassailable in equity as if entirely free from infirmity upon appellate test. In this case the only mistakes brought to view are those of the circuit court in allowing the jury to credit the mortgage debt with the amount bid by the mortgagee at the sale under the power of the mortgaged property, and of the jury in deducting this sum from the mortgage debt in their ascertain-

21 .

[Woodruff *et al.* v. Stough.]

ment of the balance then due. For the correction of these mistakes, the complainant, as plaintiff in that action, had the amplest means of redress at law, but no standing in a court of chancery. He should have moved for a new trial, which, it is to be presumed, would have been granted, or from an order denying which he could have appealed to this court. That he may not have known the effect of the judgment in time to have sought this relief will not avail him as that was mere ignorance of law. Or he should have excepted to the ruling of the court whereby it was left to the jury to enter the erroneous credit, and come to this court by appeal. These were adequate legal remedies for redress of the wrong done him; but whether adequate or not, he cannot go into a chancery court for the correction of mere errors committed by the court of law.

The chancelor—it is to be inferred from the fact that he sustained the demurrers to the bill without the amendment setting forth mistake on the part of judge and jury, and overruled them after this amendment had been made—ruled upon the theory that equity had jurisdiction to correct mistakes of the kind we have been considering; but counsel for appellee does not attempt to sustain the decree upon that consideration at all, but only on the ground that the respondents, by insisting upon the amount bid at the sale under the power being credited on the mortgage debt, and by having it so credited in the ascerainment of the balance due, ratified that sale and have thus estopped themselves to claim the property or its alternate value upon payment of such balance; and this position is sought to be supported by a reference to the case of *Espalla v. Touart*, 96 Ala. 137. In that case a mortgagee was made, and voluntarily remained, a party to a suit to foreclose another mortgage on the same land, and he set up in that suit a claim to the purchase money realized on a previous sale of the mortgaged property on the ground that the lien of his mortgage was superior to that of the other mortgage. And it was held that he thereby ratified such sale, and could not, after that contest for the purchase money was determined against him, proceed under his mortgage to sell the land itself. The application of this ruling to the case at bar is not apparent. It is quite true that the defendants in the detinue suit insisted

upon the mortgage debt of the plaintiff therein being
credited with the sum bid by the plaintiff at a sale
under the mortgage; and this abstract fact dissoci-
ated from the circumstances under which and the pur-
pose for which the claim to such credit was ad-
vanced might amount to an election to ratify
that sale. But these circumctances, and this purpose,
resulting in and effectuated by, as is the fact, a condi-
tional judgment in favor of the defendants for the prop-
erty itself, wholly rebut the idea that the defendants
ever intended to make or did in fact make such election.
The whole purpose of the suggestion made by the defen-
dants looking to an ascertainment of the balance due on
the mortgage was that they might pay such balance and
thereby entitle themselves to the mortgaged p roperty.
Their claims of credit for the amount bid at the sale was
a mistaken one and should not have been allowed, but
the implication that would otherwise have resulted from
its interposition and allowance, or even from its interpo-
sition alone, that their purpose and election was to con-
firm title in the purchasers at the sale and content them·
selves with the price bid thereat by way of credit on a
debt they owed, is entirely overturned by the circum-
stances under which and the· purpose for which the
claim was made. They in effect said to the plaintiffs in
the detinue suit : "We disaffirm the sale and purchase
by you under the power, and that sale to the contrary
notwithstanding we now claim and assert the right
which the statute gives us to pay the balance due you on
the mortgage debt as ascertained by the jury and upon
such payment to have judgment entered in our favor for
the mortgaged property now in your possession or its
alternate value to be paid us if you should fail to return
the property." It is impossible to evolve an election
to ratify the sale out of this attitude and proposition
of the defendants in that action. To the contrary their
position was an implied, and the suggestion they made
to the court was an expressed election to disaffirm the
sale under the power and to take the property : and the
fact that they claimed and were allowed a credit for the
amount bid at the sale, exerts no more influence against
the right to the property which they at the same time
asserted, than had they claimed and been allowed any
other credit to which they were not entitled.

The complainant is not entitled to the relief prayed or any relief on the facts averred in his bill.

The foregoing opinion presents the views of the Chief-Justice and Justice McClellan in this case. Justice Coleman, Head and Haralson reach a different conclusion as shown in the opinion of Justice Coleman. And in consonance with that conclusion the decree of the chancery court must be

Affirmed.

COLEMAN, J.—The facts are sufficiently stated in the opinion of Justice McClellan. These show that appellees Stough *et al.*, as mortgagees, sued in detinue to recover certain articles of personal property which were conveyed to them by the mortgage. The defendant having neglected to give bond as provided in section 2718 of the Code of 1886, the plaintiff executed the necessary bond, and the property was delivered to him. Section 2718 reads as follows: "If the defendant neglect for five days to give such bond, the property sued for must be delivered to the plaintiff, on his giving bond with sufficient surety, in double the value of the property, payable to the defendant, with condition to deliver the property to the defendant thirty days after judgment, in case he fail in the suit, and to pay damages for the detention of the property and costs of suit. If the plaintiff fail to give such bond for five days after the expiration of the time allowed the defendant, the property must be returned to the defendant." During the pendency of the detinue suit, and after the property had been delivered to the plaintiff in pursuance of the power contained in the mortgage, the plaintiff sold the personal property sued for, and certain lands which were embraced in the mortgage. Sections 2720 and 2721 are as follows:

"2720. If the suit is by a mortgagee, or by his assignee, against the mortgagor, or one holding under him the defendant may, upon suggestion, require that the jury ascertain the amount of the mortgage debt, and such ascertainment must be entered on the record of the judgment, and the court must order that, if the debt so ascertained, interest and costs be paid within thirty days no execution or other process shall issue on the judgment; and on payment thereof to the plaintiff, or to the clerk

[Woodruff *et al.* v. Stough.]

for his use, the clerk must, on the face of the record of the judgment, indorse the fact of such payment; and after such payment, the plaintiff shall be deemed the unsuccessful party within the meaning of the succeeding section."

"2721.   If the unsuccessful party, who has given bond and taken the property into possession, fails, for thirty days after the judgment, to deliver the property, and to pay the damages assessed for the detention thereof, and the costs, the sheriff must upon the bond make return of the fact of such failure; and thereupon the bond has the force and effect of a judgment, on which execution may issue against any or all the obligors thereon for the alternate value of the property as assessed by the jury, the damages assessed for its detention, and the costs; if the property be delivered, and the damages assessed for its detention and the costs be not paid, the sheriff upon the bond must make return of the fact, and execution must issue against any or all of the obligors for such damages and costs, or for either, as either may be unpaid."

When the detinue suit came on to be heard for trial under the provisions of section 2720, upon the suggestion of the defendant, the jury were required to ascertain the amount of the mortgage debt and upon this issue, the defendant claimed as a payment and credit the purchase price of the property sold by the mortgagee, and upon his demand the purchase price was credited on the mortgage debt, thereby reducing it to fifty-two dollars. The defendant paid the fifty-two dollars and cost to the clerk and the property not being delivered over by the obligee, the sheriff endorsed the breach of the bond.

In my opinion the court did not err in receiving evidence of the payment made upon the mortgage debt. Parties by mutual agreement have the unqualified right to settle disputed claims and litigations at any time, and where there is neither fraud nor imposition, the parties will be bound by such settlement, Take this case. If the defendant had paid the plaintiff in money, during the pendency of the detinue suit after the execution of the forthcoming bond by plaintiff, and the plaintiff had accepted the money, can any one doubt that under a plea of payment *puis darrein continuance* the defendant

would have been entitled to a credit of the amount paid upon the mortgage debt? What would have been the consequence if such payment had not been allowed to reduce the mortgage debt? Simply that although the plaintiff had been paid, the mortgage debt would have been ascertained at its full amount and before the defendant could have claimed a restoration of the mortgage property, he would have been required to pay the entire debt again. To have so ruled in my opinion would have constituted reversible error. That the payment was made in property only a part of which was included in the mortgage, cannot vary the rule. I do not hold that the plaintiff had the legal right to sell the mortgaged property, after having acquired possession of it by the execution of the forthcoming bond. That question will be referred to hereafter. I hold that the payment in property accepted by the payee at an agreed valuation stands upon the same footing, as if the payment had been made in money, and it can make no difference that a portion of the property was the subject matter of the detinue suit, The defendant was entitled to show, as he did show, that the mortgage had been satisfied in whole, or in part according to the facts, an t to such extent have the mortgage debt reduced and thereby relieve his property of the mortgage lien. Under this construction of the statute each party will be protected in all their rights—any other would make shipwreck of justice. The question then is, did the parties agree that the property should be taken by the mortgagee in payment *pro tanto* of the mortgage debt? I am of opinion that the principles of law which determine this question are elementary. No person will be permitted to sue another for money had and received to his use, which is shown to be proceeds of property of the plaintiff, and after having recovered judgment and received the value in money, then claim from the party paying, the property also. No person can plead payment or set-off to a demand, and after receiving the benefit of such payment or set-off maintain an action upon the same claim. In detinue when the plaintiff recovers judgment for the property or its alternate value, a payment by the defendant of the alternate value, and its acceptance, vest the title to the property in the defendant. A party may waive a tort, and sue in assumpsit. This is prerecisely

what the defendant has done in this case. By claiming and receiving a credit upon the mortgage debt, of the full value of the property, and which was assented to or acquiesced in by the plaintiff, though done after the execution of the forthcoming bond, the parties agreed that the property thus paid for, should belong to the plaintiff, and the judgment of the court in the detinue suit where the payment was allowed, is conclusive upon him in the present proceeding. The defendant himself in the detinue suit, for whose protection the forthcoming bond was required, by the sale of the property to the plaintiff, and the reception of the value thereof, relieved the obligor from complying with the conditions of the bond. It seems to me this conclusion is uncontrovertible.

It is contended that the trial court erred in the detinue suit, in allowing the credit of payment, to the defendant, and that the plaintiff's remedy was by appeal to this court. It has been stated, my opinion is, the court did not err, and that it would have been error not to have allowed the payment as a credit to the defendant. If it was a mistake or error, however, the defendant cannot reap any advantage from such mistake or error. The law is well settled, that a party who by his plea or representation has obtained a judgment to his advantage, is estopped from asserting that such judgment was erroneous, as to the party against whom he obtained such advantage.—*Hodges v. Winston*, 95 Ala. 514, *Caldwell v. Smith*, 77 Ala. 157 ; *Hill v. Huckabee*, 70 Ala. 183 and authorities cited. The only question then is, whether in the detinue suit the defendant claimed as a payment the value of the property sold by the plaintiff, and received the advantage of such sum as a credit upon the mortgage debt. If so, and the fact is admitted, he is estopped by his plea and the judgment thereon, from enforcing the forthcoming bond which provided for the return of the same property. A defendant to a detinue suit, brought by a mortgagee who has taken possession of the property, under a forthcoming bond, after he has interposed a successful defense, or has paid the mortgage debt as ascertained by the jury, is not confined to the summary remedy given by the statute upon the bond. This remedy is merely cumulative. The defendant may, if he sees proper, sue upon the bond.—*Masterson v. Matthews*,

[Woodruff *et al.* v. Stough.]

60 Ala. 260 ; *Wood v. Coman*, 56 Ala. 283. Can any one doubt, that if the defendant in the detinue suit, had sued upon the bond for its breach, that the plaintiff in the detinue suit had a perfect defense? A plea averring the admitted facts, to-wit, that after the execution of the bond, the defendant had purchased from the obligee the property and paid him for it, would have presented a conclusive answer to such suit. The rights of the parties cannot be changed by the character of the remedy pursued. The remedy adopted may not always be the proper one to enforce or protect a right, but the right remains the same. I think it safe to assert, that if the defendant could not maintain a suit upon the bond for a breach, he is not entitled to have it summarily declared forfeited for a breach and have an execution thereon. No court would tolerate an attack by the mortgagor of the sale of the land, after he had with full knowledge claimed and received the purchase price thereof, and the personal property, under the evidence, is subject to the same rule.

The facts stated in the bill do not entitle the complainant to relief against the judgment in the detinue suit. There was no fraud, mistake or grounds of surprise in the detinue suit proper. The wrong consisted in the demand of the defendant in the detinue suit, to have the bond returned forfeited after the determination of the detinue suit. Whether the clerk of the court or the sheriff knew what had been concluded by the judgment in the detinue suit or not, is of no concern. The defendant in that suit, in law was bound to know and did know that after the execution of the fortcoming bond, he had claimed and received full payment for the property and thereby discharged the obligors from a compliance with its requirement to have it forthcoming. He perpetrated a fraud and a grievous wrong in having the bond returned forfeited so as to give the bond the force and effect of a judgment in his favor and have execution issued thereon. This is the fraud that the facts stated in complainants' bill entitled them to relief against, and though the specific relief may not be granted, the general prayer for relief is sufficient.

We find no provision in the statute under which the complainants could find redress in a court of law, and it is the province of a court of equity to supply the defects

of a court of law, to prevent irreparable injury, and to relieve against judgments obtained by fraud.

In my opinion the complainants are entitled to relief.